# In the United States Court of Federal Claims

No. 08-375C
(Filed: July 15, 2008)

* * * * * * * * * * * * * * * * * * * * * * *
TIN MILLS PROPERTIES, LLC,
*Plaintiff*,

v.

THE UNITED STATES,

*Defendant*

and

GLENMARK HOLDING, LLC,

*Intervenor.*

* * * * * * * * * * * * * * * * * * * * * * *

Bid Protest; Injunction; GSAR 552.270-1(c)(7); Negotiated Procurement; Material Deviation from Solicitation Terms; Amendments to Solicitation.

*Kristen E. Ittig*, McLean, VA, with whom was *Kelly Busby*, for plaintiff.

*David A. Harrington*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were *Gregory G. Katas*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White*, Assistant Director, for defendant.

*William E. Galeota*, Morgantown, West Virginia, with whom was *Brian D. Gallagher*, for intervenor.

## OPINION

BRUGGINK, Judge.

Pending in this bid protest action are the parties' cross-motions for judgment on the administrative record. The procurement at issue involves the

lease by the General Services Administration ("GSA") of an office building to be constructed on a designated site in Morgantown, West Virginia. The contract was awarded to the intervenor, Glenmark Holding, LLC ("Glenmark"). Plaintiff, Tin Mills Properties, LLC ("Tin Mills"), seeks an injunction prohibiting performance of the contract and ordering the reopening of the competition for consideration of plaintiff's offer. The administrative record ("AR") was filed, and the matter is fully briefed. Oral argument was held on July 10, 2008. For reasons announced at the argument, and as explained further below, plaintiff's motion for judgment on the administrative record is denied and defendant's cross-motion for judgment on the administrative record is granted.

## BACKGROUND

In February 2005, GSA decided to dispose of the Harley O. Staggers Federal Building located in Morgantown, West Virginia. By July 2007, all agencies housed in the building were to be relocated to leased space. The U.S. Department of Agriculture ("USDA"), as the largest tenant, has three separate agencies in the building. These agencies occupy approximately 30,000 square feet of space and must continue to be located in one building. Accordingly, GSA determined that USDA needed approximately 30,000 square feet, that the USDA agencies should not be located on more than two floors, and that at least 163 parking spaces were needed. The plan was to locate a suitable piece of land, obtain a transferable option, and include that option in a subsequent competitive procurement for construction and lease-back of a building.

The first and independent step, therefore, was to obtain the option to purchase a piece of land. On December 4, 2005, GSA advertised for existing space, new construction, and sites within the city limits of Morgantown. GSA evaluated the responses and identified 13 locations within the city of Morgantown to evaluate. A market survey was conducted on January 23, 2006. GSA and USDA officials, including the GSA contracting officer ("CO"), Stacy Keefer, visited the properties and gathered pertinent information. A site located at 1920 Earl Core Road, owned by Tin Mills, was among those considered. Tin Mills noted that its site had been completely remediated with one exception: "a building must be constructed on the land and the site must be sealed with asphalt to encapsulate it." AR 305. The cost was $1.7 million. Ultimately, GSA elected not to pursue the Tin Mills site "due to its cost, surroundings, and environmental concerns." *Id.*

The property offered by Glenmark was also among those included within the survey. The property had formerly been the site of a West Virginia Department of Highways ("DOH") garage and salt barn. The state remained responsible for remediating environmental hazards but was six to nine months behind schedule when GSA conducted its survey. Glenmark proposed demolishing the existing structures and constructing a two-story building with adjacent surface parking. The site cost was either $1.5 million for purchase ($200,000 less than the cost of the Tin Mills site) or $15,000 per month for a ground lease.

The Glenmark site initially was not selected "due to its environmental condition, the time required for remediation, cost, and surroundings." AR 306. Instead, the CO first decided to pursue a site proposed by West Virginia University ("WVU"). In April 2007, however, when negotiations with WVU failed to yield a viable ground lease, the CO revisited the market survey for an alternate site. The CO determined that the Glenmark site at 1550 Earl Core Road was the best alternative. By June 2007, DOH had completely remediated the site, and underground monitoring had been initiated to verify that the environmental clean-up was successful. Glenmark expected to have the final certificate of completion from the West Virginia Department of Environmental Protection approving the completion of the clean-up by November 1, 2007. GSA verified that the site satisfied its national and regional environmental requirements and prepared a draft categorical exclusion checklist documenting compliance and giving clearance to move forward with the site. On July 9, 2007, GSA acquired an assignable option to purchase the 1550 Earl Core Road site.

On September 5, 2007, GSA issued solicitation No. 5WV0008 calling for construction and lease to the government of an office building located at the Glenmark site. This Solicitation for Offers ("SFO") specified the requirements of the building and its location:

> 1.1 AMOUNT AND TYPE OF SPACE (SEP 2000)
>
> A. The General Services Administration (GSA) is interested in leasing approximately 35,075 rentable square feet of space. The rentable space shall yield a minimum of 30,500 ANSI/BOMA Office Area (previously Usable) square feet, available for use by tenant for personnel, furnishings, and equipment and 165 parking spaces. . . .

> B. The Offer shall 1) be for space located in a quality building of sound and substantial construction as described in this SFO, 2) have a potential for efficient layout, 3) be within the square footage range to be considered, and 4) be in compliance with all of the Government's minimum requirements set forth herein. . . .
>
> . . . .
>
> 1.2 AREA OF CONSIDERATION
> The General Services Administration has an executed option to purchase real estate on an approximately 2.425 acre parcel of land located at 1550 Earl Core Road, Morgantown, West Virginia. The option to purchase real estate will be conveyed to the successful offeror for the purpose of construction of an office building. (See attached executed Option.)

AR 847. A copy of the executed option was included in the solicitation package.

The SFO called for a negotiated procurement. It included the language of GSA Regulation ("GSAR") 552.270-1(c)(7) (2004):

> Offerors may submit proposals that depart from stated requirements. Such a proposal shall clearly identify why the acceptance of the proposal would be advantageous to the Government. The proposal must clearly identify and explicitly define any deviations from the terms and conditions of the solicitation, as well as the comparative advantage to the Government. The Government reserves the right to amend the solicitation to allow all offerors an opportunity to submit revised proposals based on the revised requirements.

AR 932-33.

The solicitation was issued to 30 interested parties. The SFO originally specified that offers were due by October 4, 2007, although that date was later

extended to October 31, 2007. Seven offers were received, including one from intervenor Glenmark and one from plaintiff Tin Mills.

The USDA Source Selection Plan stated that the lease was to be awarded to the offeror whose proposal provided the greatest value to the government based on price and technical award factors. Both technical and price factors would be considered in establishing the competitive range, and only the highest ranking offers would be included. Offers not in the competitive range would be given no further consideration.

During September and October 2007, GSA added three amendments to the SFO regarding the site for the building. All three amendments related to the use of the Glenmark site. These amendments included a geotechnical evaluation of the site, three variances from zoning ordinances, and a land use covenant pertaining to the Glenmark site.

On July 17, 2007, Tin Mills sent the CO an e-mail requesting a SFO "for the office building located at 1550 Earl Core Road, Morgantown, WV." AR 492. Tin Mills timely submitted an offer, but it proposed use of its earlier-rejected site, 1920 Earl Core Road, rather than the Glenmark site. Tin Mills proposed an annual rent of $1,014,385 for the government's use of the office space. In the letter accompanying its offer, Tin Mills noted that it proposed an office building on a site different than the site in the SFO, but it asserted seven advantages:

> 1, Location – subject property next to I-68 affording the closest access to a major highway of any site in Morgantown.
>
> 2, Development contains various food establishments, fuel, banking, hotel and post office, [within] walking distance and without crossing any highways.
>
> 3, Proposed location very possibly could contain other GSA properties allowing for improved security and efficiency with common landlord and location.
>
> 4, All agencies located on one common floor improving access to public as well as inter activity between agencies. Use of common areas located on same floor as agencies.

> 5, Subject property has multiple accesses from Rt. 7 (Earl Core Road) as well as Eljadid Street. Eljadid has traffic light now and Sterling Drive will have traffic light with Rt. 7 allowing for quicker and safer access to [Rt.] 7 both for employees and general public.
>
> 6, Secured parking for employees and government vehicles can be provided.
>
> 7, Property located next to Rails to Trails.

AR 3352. We note that, with the exception of items 4 and 5, all the factors cited would have been known to the CO from the earlier site selection survey.

On January 22, 2008, the CO signed a competitive range determination that identified three out of seven offers as within the competitive range. Tin Mills was not ranked for comparison purposes and was excluded from the competitive range. In her competitive range determination, the CO wrote that Tin Mills' proposal was deemed nonresponsive because it offered "a site other than the site specified in the SFO which GSA has executed an option on." AR 1203.

In a letter dated January 22, 2008, the CO notified Tin Mills that its offer "[would] not be considered further for award based upon [] consideration of [the] proposal against all evaluation criteria."[1] AR 3351. In a letter dated the same day, Tin Mills requested a pre-award debriefing, pursuant to FAR 15.505.[2] Specifically, Tin Mills requested a "detailed written explanation of the evaluation criteria of [Tin Mills'] proposal and the ranking of all offerors." AR 3349. It further requested notification of "any intent to award and the name and location of successful offerors." AR 3349. Also on January 22, 2007, in a memorandum to the file, the CO indicated that GSA would not provide pre-award debriefings. As required by FAR 15.505(b), the CO documented her rationale for delaying the debriefing:

---

[1]This letter constituted the required Notice of Elimination from the Competitive Range. *See* 48 C.F.R. § 15.503(a) (2008).

[2]The Federal Acquisition Regulation ("FAR") is codified in Title 48 of the Code of Federal Regulations.

> There is a compelling need to press forward with the procurement, as the site option will expire on April 1, 2008. Furthermore, it is imperative that the agency be relocated out of the federal building (current location) and into their new space as soon as possible so that the disposal of the federal building may begin. For these reasons, it is not in the best interest of the Government to provide pre-award debriefings.
>
> Debriefings, if requested, will be provided no later than the time post-award debriefings are provided under FAR 15.506.

AR 1174. In a letter dated February 5, 2008, the CO notified Tin Mills that she would provide a debriefing following contract award.

On February 26, 2008, the informal source selection team, having completed the technical evaluations and rankings, reviewed the price evaluation information of the three offerors in the competitive range. The CO noted that the three offers received very similar technical rankings but concluded that Glenmark's offer provided the best value to the government. On March 19, 2008, the CO awarded the 15-year lease to Glenmark. In a letter dated April 9, 2008, the CO responded to Tin Mills' request for debriefing:

> Your offer proposed space to the Government on a site located at 1920 Earl Core Road, Morgantown, West Virginia. The SFO clearly required that the building be constructed on a site located at 1550 Earl Core Road in Morgantown for which the Government had an executed option. The Government received multiple offers which identified proposals for the SFO-specified site. As the result of a source selection procurement, an offer was identified which provided the best value to the Government, price and technical factors considered. The annual rent proposed by the awardee, Glenmark Holding, LLC, was $1,080,000.00.

AR 3346. The letter indicated that an enclosure was also being sent, but no enclosure was included.

In a letter dated April 15, 2008, Tin Mills requested that GSA include the indicated enclosure and more clearly state "whether [its] proposal was even considered and evaluated." AR 3345. Tin Mills also gave GSA its formal

notice of an intention to file a protest to the award in accordance with FAR 33.104 in this letter. In an e-mail dated April 28, 2008, counsel for Tin Mills wrote to GSA repeating its request for a debriefing. The CO responded in a letter dated April 29, 2008, and explained that GSA's April 9, 2008 letter contained the "substance of the debriefing information" and that the word "enclosure" had been erroneously added. AR 3341. The CO went on to write that the information Tin Mills requested in its January 22, 2008 letter was "procurement sensitive and would not be disclosed in a debriefing letter." AR 3341.

Tin Mills responded with a letter, dated May 7, 2008, in which it requested a debriefing and listed the following minimum requirements under FAR 15.506(d) that Tin Mills considered absent from the debriefing:

1. GSA's evaluation of the significant weaknesses or deficiencies in Tin Mill's proposal

2. The awardee's overall evaluated price (not just the negotiated lease amount)

3. The awardee's technical rating

4. Tin Mills' technical rating

5. Any past performance information regarding Tin Mills

6. The overall ranking of all offerors

7. A summary of the rationale for award (beyond stating that the awardee presented the best value)

8. A response to Tin Mills' inquiry about whether its proposal was considered and evaluated

AR 3334. The CO responded by letter dated May 14, 2008, stating that her letter of April 9, 2007 satisfied the requirements of a debriefing under FAR 15.506.

On May 23, 2008, Tin Mills filed its protest here of the award to Glenmark, alleging that GSA had violated GSAR 552.270-1(c)(7). According

to plaintiff, this clause requires GSA to evaluate proposals that depart from solicitation requirements if the offeror identifies and justifies the departure. Further, it contends that the court has jurisdiction to review the agency's rationale for not accepting the alternative proposal.

After an initial conference with the parties and in light of plaintiff's concerns that the debriefing was inadequate, we ordered GSA to more fully explain in writing why it considered plaintiff's offer to be outside the competitive range. Accordingly, the CO submitted a declaration addressing plaintiff's concerns. She noted that Tin Mills' site previously had been assessed in 2005. She was personally familiar with the site and had considered it for a different GSA project in the fall of 2007. She learned, however, that "environmental work required at the Tin Mills site was far more complicated than their representations in the initial survey and were not detailed in their offer." (Keefer Decl. ¶ 18.) Ms. Keefer took the position, moreover, that the GSAR clause "does not require that GSA depart from its stated requirements every time a proposal includes a proposed departure from those requirements." (*Id.* ¶ 19.) According to Ms. Keefer, the clause allowed her to "consider a stated departure that was advantageous to the Government[; h]owever consistent with Federal Acquisition Regulation Subpart 15.206(d), [she] would amend the Solicitation only if the proposal was of interest to the Government." (*Id.*) Tin Mills' site was not advantageous because it "would trigger significant environmental work." (*Id.* ¶ 20.) Ms. Keefer determined that Tin Mills' proposal was "premised on an unacceptable site . . . [and thus] was eliminated from the competitive range." (*Id.* ¶ 21.)

## DISCUSSION

The sole issue before us is the interpretation of GSAR 552.270-1(c)(7). Plaintiff argues that the inclusion of this clause in the SFO obligated GSA to consider on the merits *all* offers, even those deviating materially from the stated requirements. In effect, plaintiff suggests that, even though its offer did not make use of the site which formed the basis of the SFO, this clause means that there can be no non-conforming offers and that the failure to include Tin Mills in the competitive range could only be effected after a full examination of the advantages and disadvantages of its offer. It contends that the particular site on which the building was located was not, in any event, a material requirement and that Tin Mills could not be left out of the competitive range

without a substantive explanation which must pass muster under an Administrative Procedures Act style review.[3]

Defendant argues that GSAR 552.270-1(c)(7) permits GSA to consider offers that depart from solicitation requirements but does not obligate it to do so. The failure to justify a refusal to consider changing the solicitation terms, it contends, is not subject to court review. Although not strictly necessary to its argument, defendant also contends that if GSA had been interested in Tin Mills' offer, the agency would have had to amend the solicitation and notify all bidders. The SFO process, defendant contends, should be interpreted in the context of the statutory requirement for full and open competition, 41 U.S.C. § 253, and the background principle set out in FAR 15.206, which requires the government to amend the solicitation if a proposal of interest deviates from the stated solicitation requirements.

We must first examine what, if any, obligation the GSAR clause imposes on the government to consider an offer that departs from the stated solicitation requirements. If we find that this clause imposes an obligation on the agency to consider non-conforming offers, we must then examine whether the failure to open the sale to offers which deviate from what the agency seeks is subject to court review. Only if that determination is subject to court review, need we also consider whether the government had to amend the solicitation before awarding a nonconforming offer.

We begin by noting the obvious: Nothing in the language of the clause ("Offerors may submit proposals that depart from stated requirements.") compels plaintiff's reading. GSAR 552.270-1(c)(7). There is certainly no explicit promise to consider non-conforming proposals. And, as we explain below, there is good reason not to imply such a promise.

In negotiated procurements, "the court will take a more deferential view of whether an agency's actions were rational or reasonable than it will in sealed bidding." John Cibinic, Jr. & Ralph C. Nash, Jr., *Formation of*

---

[3]Bid protests are, pursuant to 28 U.S.C. § 1492(b)(2) (2006), subject to review by the court under the standards of the Administrative Procedures Act, 5 U.S.C. § 706(2)(A), which this court applies under the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, 110 Stat. 3870, now codified at 28 U.S.C. § 1491(b)(4).

*Government Contracts* 1554 (3rd ed. 1998) (citing *Logicon, Inc. v. United States*, 22 Cl. Ct. 776 (1991)); *see also Cincom Sys. v. United States*, 37 Fed. Cl. 663, 672 (1997) ("[contracting officials'] discretion is especially broad in negotiated procurements"); *126 Northpoint Plaza Ltd. P'ship v. United States*, 34 Fed. Cl. 105, 107 (1995) ("In negotiated procurements, contracting officials possess 'broad discretion in the process of obtaining the contract most beneficial to the government.'") Here, the CO eliminated Tin Mills' offer from the competitive range because it was "nonresponsive." AR 1203. Although the concept of responsiveness or "an unconditional promise to comply with the terms of a solicitation," does not apply directly to negotiated procurements, offers must comply with the material terms and obligations in a SFO to merit consideration. *Gardiner, Kamya & Assocs., P.C.*, 1995 WL 19599, B-258400, 95-1 CPD ¶ 191, *2 n.1. Stated inversely, "[a] proposal that fails to satisfy a material solicitation term is unacceptable and may not form the basis for an award." *Integrated Business Solutions, Inc. v. United States*, 58 Fed. Cl. 420, 428 (2003) (citing *Marisco, Ltd.*, 1989 U.S. Comp. Gen. LEXIS 719, B-235773, 89-2 CPD ¶ 8; *Minigraph, Inc.-Recon.*, 1990 U.S. Comp. Gen. LEXIS 1350, B-237873.3, 90-2 CPD ¶ 492).

Consistent with this general approach, GSAR 570.303-4, "Changes to SFOs," provides that, if the government's requirements change, "either before or after receipt of proposals, issue an amendment." Similarly, GSAR 570.306, "Evaluating offers," instructs COs that they "must evaluate offers solely in accordance with the factors and subfactors stated in the SFO." This strongly suggests, not only that the agency has no obligation to consider non-conforming offers on the merits, but that it would be improper to do so without first changing the solicitation and notifying other bidders.

We also take note of FAR 15.206(d), which applies to negotiated procurements and specifically addresses when the agency must amend the solicitation. Although that regulation was not specifically incorporated in the SFO here, it reflects general background principles applicable to negotiated procurements:

> If a proposal of interest to the Government involves a departure from the stated requirements, the contracting officer shall amend the solicitation, provided this can be done without revealing to the other offerors the alternate solution proposed or any other information that is entitled to protection [].

48 C.F.R. § 15.206(d). In short, only proposals of interest to the government need to be pursued, and, because they imply a departure from the advertised terms of the SFO, other bidders must be notified.

Plaintiff suggests that GSAR 552.270-1(c)(7) is an exception to this approach; that by soliciting non-conforming offers, any proposal submitted in response is *per se* responsive. Although Tin Mills takes the position that the alternate site it offered was not a material deviation, it argues that, even if plaintiff's deviation from the terms of the SFO had been material, GSAR 552.270-1(c)(7) required GSA to consider and evaluate its offer. The agency could only reject it after weighing the advantages and disadvantages suggested by Tin Mills and explaining its reasoning to plaintiff and to the court. According to plaintiff, if GSA did not want to evaluate alternative proposals, it should have either not included the GSAR clause or stated that the location of the building was a mandatory requirement, exempt from this clause.

Such an interpretation would lead to a scenario for bid protests which is completely untethered to the requirements of the SFO. It would effectively make all solicitation requirements optional. The agency could be called upon to justify its stated requirements to any offeror. We cannot adopt this interpretation.

Instead, we agree with defendant that Tin Mills' offer could be excluded from the competitive range because it materially departed from the solicitation requirements.[4] Tin Mills had every reason to know that a fundamental predicate of the solicitation was the site selected by the government for the building. The solicitation specified that the offerors should use the 1550 Earl Core Road site in submitting proposals for the building. The executed option to purchase that site was included with the solicitation. The three amendments made to the SFO were all specific to the Glenmark site. These events left no room for plaintiff to doubt defendant's commitment to construct a building on the Glenmark site.

---

[4]Plaintiff suggests that *de minimis* deviations from the requirements set out in the SFO could be overlooked in considering an offer for inclusion in the competitive range, because such an offer arguably could comply with the requirements of the SFO. We need not explore that distinction. As the facts demonstrate, Tin Mills' offer materially departed from the agency's stated requirements.

To the extent Tin Mills was entitled to any explanation for why it was omitted from the competitive range, the statement that "[y]our offer proposed space to the Government on a site located at 1920 Earl Core Road, Morgantown, West Virginia. The SFO clearly required that the building be constructed on a site located at 1550 Earl Core Road in Morgantown for which the Government had an executed option," told Tin Mills everything it needed to know. AR 3346.

While scenarios could be constructed in which the way an agency states its procurement needs might be reviewable, for example if they are unduly restrictive, plaintiff's alternative interpretation of GSAR 552.270-1(c)(7) makes no such distinctions. It carries the necessary implication that all the agency's choices about what it wishes to procure have to be justified to bidders and the court. This is far beyond the role of the court in bid protests. The court functions as a referee, making certain that statutory requirements are met and that fundamental fairness is observed. *ABF Freight Sys. v. United States*, 55 Fed. Cl. 392, 409 n.13 (2003) ("law is well-settled that the determination of an agency's procurement needs and the best method for accomodating them are matters primarily with[in] the agency's discretion"); *Cincom Sys.*, 37 Fed. Cl. at 672 (1997) ("court should not substitute its judgment for that of a procuring agency and should intervene only when it is clear that the agency's determinations were irrational or unreasonable"). We are not called on to second-guess the agency's choices about its procurement needs. *Xtra Lease, Inc. v. United States*, 50 Fed. Cl. 612, 625 (2001) ("determination of an agency's minimum needs is a matter within the broad discretion of agency officials. . . . It is not the duty of the court to second guess such determinations.")

As defendant points out, this is particularly true here, because GSA has express statutory authority to select the site for federal buildings, 40 U.S.C. § 3304(b), (d)(2), and that selection process is not subject to the requirements of the Competition in Contracting Act ("CICA"), 41 U.S.C. § 251 et. seq. Title 40, Chapter 33, which pertains to the acquisition, construction and alteration of public buildings and property, states:

> (b) Acquisition of land or interest in land for use as sites. The Administrator may acquire, by purchase, condemnation, donation, exchange, or otherwise, land or an interest in land the Administrator considers necessary

> for use as sites, or additions to sites, for public buildings authorized to be constructed or altered under this chapter.
>
> . . . .
>
> (d) Solicitation of proposals for sale, donation, or exchange of real property. When the Administrator is to acquire a site under subsection (b), the Administrator, if the Administrator considers it necessary, by public advertisement may solicit proposals for the sale, donation, or exchange of real property to the Federal Government to be used as the site. In selecting a site under subsection (b) the Administrator . . . may–
>
> . . .
>
> (2) acquire the site without regard to title III of the Federal Property and Administrative Services Act of 1949 (41 U.S.C. § 251 et. seq.).

40 U.S.C. § 3304(b), (d)(2). An option to purchase and a land lease are plainly "interests in land."

The decision to obtain a lease on the Glenmark site, in short, was past history. What plaintiff proposes, however, is to reopen that previously-concluded site selection process through this follow-on procurement. Doing so would fly in the face of 40 U.S.C. § 3304.

We have concluded that Tin Mills was properly excluded from the competitive range, that it had no right to insist on an evaluation of its non-conforming proposal, and that it had no right to any further explanation than what it received. It is therefore unnecessary to consider the parties' other arguments.

## CONCLUSION

While GSAR 552.270-1(c)(7) allows offerors to submit proposals that depart materially from solicitation requirements, the government has no

obligation to consider them, or explain why it did not do so. Accordingly, we grant defendant's cross-motion for judgment on the administrative record and deny plaintiff's cross-motion. The Clerk is directed to enter judgment for defendant. No costs.

s/ Eric Bruggink
ERIC G. BRUGGINK
Judge